657 So.2d 1094 (1995)
STATE of Louisiana in the Interest of EG.
No. 95 CJ 0018.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
Writ Denied September 1, 1995.
*1095 Jacquelyn E. Watts, Baton Rouge, for appellee La. Dept. of Social Services.
Mary M. Daly, Baton Rouge, for appellant EG's Mother.
Before FOIL, WHIPPLE and KUHN, JJ.
KUHN, Judge.
The trial court terminated mother's parental rights to the minor child, EG, having determined she was unfit to retain parental control and there was no reasonable expectation of her reformation. There had been a prior adjudication of EG as a child in need of care with over one year lapsing since that adjudication. Mother appeals, challenging the sufficiency of the evidence. We affirm.

FACTS
EG was born on September 10, 1990, to the appellant-mother. On December 3, 1991, EG's mother took EG to the Earl K. Long clinic requesting an immunization for the child. The doctor on duty discovered that EG's left hip was dislocated. He also observed an old burn and other marks on EG's back.
EG had sustained a bone fracture and a total dislocation of her left hip at least two weeks prior to her arrival at the Earl K. Long clinic, according to medical examinations. EG's mother denied knowledge of the existence of and the circumstances surrounding EG's left hip injury. By court order, EG was placed in the custody of the appellee-State of Louisiana Department of Social Services ("the State") on December 5, 1991, and was subsequently adjudicated a child in need of care[1].
After unsuccessful attempts by the Office of Community Services to reunify mother and daughter a petition for involuntary termination of parental rights was filed by the *1096 State to free EG for adoption. After a trial on the merits, the trial court signed a judgment on September 23, 1994, ordering all parental rights and obligations of the mother relative to the minor child, EG, to be totally and irrevocably terminated and dissolved. The mother appeals asserting that the evidence does not support the trial court's findings of fact that she is unfit to retain parental control of EG and that there is no reasonable expectation of her reformation in the foreseeable future.

ANALYSIS
In a proceeding to involuntarily terminate a parent's rights, La.Ch.C. art. 1015 provides in relevant part:
The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:
(1) Prior criminal conviction
(a) As a result of a criminal prosecution, the parent has been convicted, either as a principal or accessory, of a crime against the child who is the subject of this termination proceeding, or against another child of the parent.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
. . . . .
(4) Prior adjudications as a child in need of care
(a) One year has elapsed since a child in need of care adjudication.
(b) The parent is unfit to retain parental control.
(c) The parent has shown no significant, substantial indication of reformation, and there is no reasonable expectation of his reformation in the foreseeable future.
The evidentiary standard established in termination cases mandates that the State present proof by clear and convincing evidence of the parent's failure to comply with all the enumerated conditions specified in each paragraph of La.Ch.C. art. 1015 which permits termination of parental rights under certain circumstances. State in Interest of JL, 93-352 (La.App. 3rd Cir. 5/18/94), 636 So.2d 1186, 1191. Factual findings of the trial court in determining whether the requirements of La.Ch.C. art. 1015 regarding termination of parental rights have been satisfied will not be set aside in the absence of manifest error. State in the Interest of WS, 626 So.2d 408, 414 (La.App. 1st Cir.1993).
In her assignments of error to the trial court's findings, the appellant challenges the determination to terminate parental rights based on La.Ch.C. art. 1015(1). Appellant asserts that the sole evidence relied upon by the finder of fact was her plea of no contest to charges of cruelty to a juvenile. She contends the findings that she is now unfit to retain parental control and that there is no reasonable expectation of her reformation in the foreseeable future are not supported by the evidence.
An "unfit" parent is defined, in pertinent part, in La.Ch.C. art. 1003(10)(b) as a parent "[w]ho has consistently refused to provide reasonably necessary ... medical care" and applies in proceedings to involuntarily terminate parental rights.
Dr. Michelle Zembo testified as an expert in the field of pediatric orthepedics on behalf of the State. Dr. Zembo stated that EG had sustained a fracture of her hip. Based on her examination of EG's X-rays, she determined the injury was at least 14 days old at the time EG arrived at the Earl K. Long clinic. Because 15-month-old EG was not yet walking, Dr. Zembo believed it was unlikely that the injury could have been self-inflicted. According to Dr. Zembo's testimony, there is always some form of twist to the leg in injuries of this type. Dr. Zembo performed surgery on EG to correct the effects of the dislocation in the left hip and testified the child was in a body cast for 6-8 weeks after the operation. Dr. Zembo explained that EG would need continuing medical attention every four to six months to monitor growth in her hip area.
EG's mother testified she had not taken her daughter to the doctor for her immunizations except on one occasion. Explaining the distance from her home to a medical treatment facility was too great for her to walk, she testified that on December 4, 1991, she *1097 took EG to the Earl K. Long clinic to attend to the immunizations. Although her testimony was that she requested that the doctor check EG's legs, she further stated she was not worried about anything specific, "just that [the child] wasn't walking right or crawling right."
Twanda Laurent, the case manager for the foster care program, testified that during her investigation of this case, EG's mother, in response to a direct inquiry, felt that whatever caused her daughter to crawl funny was a result of an injury to the child during her birth. The mother explained to Ms. Laurent that while she was pregnant with EG she had fallen or had been involved in an accident and speculated that could have resulted in the child having some birth defects.
Joyce Madison testified she was the Child Protection Investigator initially assigned to EG's case. She explained that she verified the complaints received in a report from the Earl K. Long clinic. Ms. Madison stated her investigation revealed EG had sustained a left hip fracture and had received burns on her back. The record is devoid of any evidence that EG received medical treatment for the burns.
In light of the testimony contained in this record, we find no error in the trial court's conclusion that the mother consistently refused to provide reasonably necessary medical care for her minor child, EG. Accordingly, we determine the trier of fact was not manifestly erroneous in finding EG's mother unfit to retain parental control.[2]
Appellant's next contention attacks the trial court's termination of parental rights based on La.Ch.C. art. 1015(4). The appellant asserts the State failed to establish by clear and convincing evidence that she has shown no significant, substantial indication of reformation and there is no reasonable expectation of her reformation in the foreseeable future.
According to our jurisprudence, "reformation" of a parent, for purposes of determining whether parental rights should be terminated, means more than mere cooperation with agency authorities; showing a significant, substantial indication of reformation is required, such as altering or modifying in a significant way the behavior which served as a basis for the state's removal of a child from the home. See, State in Interest of Four Minor Children v. DW, 585 So.2d 1222, 1227 (La.App. 2nd Cir.1991).
Twanda Laurent testified EG's mother attended parenting classes but because no progress reports were sent, she could not elaborate on her development. Having reason to believe that EG's mother had alcohol on her breath one morning, she was sent by Ms. Laurent to Baton Rouge Substance Abuse for an evaluation but was incarcerated before she was able to successfully involve herself in the program. Citing EG's close attachment to her foster family as a basis, Ms. Laurent said the Office of Community Services had recommended EG be freed for adoption as this was in her best interest. Additionally, Ms. Laurent described the difficulties experienced by EG when she interacted with her natural mother while they visited during the reunification stage.
During a review of the family team conference reports, Ms. Laurent explained how EG's mother refused to discuss the medical abuse with her. While she eventually admitted she "should have been more careful about not getting EG's shots on time" and she "should have gotten EG to the doctor like she was supposed to for the shots," EG's mother consistently denied she had abused her daughter. Ms. Laurent testified that the mother has not accepted responsibility for the abuse and neglect of the child.
In rendering judgment, the trial court stated, "I haven't heard anything [from EG's mother] or from any witness to make this Court realize or believe that [EG's mother] herself realizes there was serious trauma to that child or that she would take any measures to make certain that that would never happen again."
Based on the testimony of Ms. Laurent and the failure of [EG's mother] to put forth any evidence of her understanding of the *1098 abuse for which her parental rights were terminated, we find the trial court's determinations that [she] has shown no significant, substantial indication of reformation and there is no reasonable expectation of her reformation in the foreseeable future are not clearly wrong or manifestly erroneous.
Appellant finally asserts that the trial court imposed an additional burden of proof on her based on certain statements made by the trial court during the hearing. An examination of the reasons for judgment reveals the decision was made by the trial court based on appropriate law. Appellant's contention that statements made by the court altered the requirements of La.Ch.C. art. 1015 is without merit.

CONCLUSION
For the reasons herein stated, the judgment of the trial court is affirmed. Although appellant prosecuted this appeal in forma pauperis, costs may nevertheless be taxed against her. La.C.C.P. art. 5188; Gibson v. Barnes, 597 So.2d 176, 178 (La.App. 1st Cir.1992). Accordingly, all costs of this appeal are assessed against appellant.
AFFIRMED.
NOTES
[1] The petition of the State alleges E.G. was adjudicated a child in need of care on December, 1992, in the Juvenile Court of East Baton Rouge. Our review of the record shows that the adjudication of E.G. as a child in need of care occurred in April, 1992.
[2] The State introduced a certified copy of the minute entry as proof of the mother's criminal conviction of cruelty to a juvenile as required under La.Ch.C. art. 1015(1)(a).