674 So.2d 1077 (1996)
STATE of Louisiana, in the Interest of TD & AW, Plaintiff-Appellee,
v.
Linda WEBB, Defendant-Appellant.
No. 28471-JA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1996.
*1078 John R. Herzog, Shreveport, for Appellee, Department of Social Services, State of Louisiana.
Alex Rubenstein, Shreveport, for Appellee, TD.
E. Paul Young, Michelle Dufour, Shreveport, for Appellant, Linda Webb.
Before SEXTON, WILLIAMS and GASKINS, JJ.
WILLIAMS, Judge.
The defendant, Linda Webb, appeals a trial court judgment terminating her parental rights as to her youngest daughter, T.D. For the following reasons, we affirm.

FACTS
The defendant, Linda Webb, is the mother of two girls, A.W. and T.D. On November 13, 1992, the defendant allowed a neighbor to babysit her daughters at three separate times during the day, and brought them home at 8:30 p.m. in the evening. Later that night, according to the defendant, she was awakened by T.D.'s cries and discovered blood in her diaper. The defendant brought the child, who was 21-months old, to LSU Medical Center, where she was examined by an emergency room physician. The physician found substantial tearing and bleeding of T.D.'s vaginal area. He opined that the child's condition was life threatening due to the significant blood loss. Apparently, the child had been penetrated by an object wider than four centimeters, and the wound was not indicative of a straddle-type injury. The doctor testified that the bleeding would have been obvious to any caretaker.
The hospital staff notified the state's child protection service because the defendant could not offer any explanation for the injury to her daughter. On November 20, 1992, the state took custody of A.W. and T.D. The girls were adjudicated as children in need of care in April 1993. They remained in the custody of the state during all relevant times *1079 in this matter. On November 14, 1994, the state filed a petition to terminate the parental rights of the defendant. Prior to the termination hearing, the state moved to dismiss the proceedings regarding A.W., who was being considered for placement with her father.
After a hearing, the trial court found that the state had shown by clear and convincing evidence that the defendant's parental rights should be terminated pursuant to LSA-Ch. C. 1015(5). T.D. was placed with foster parents and has remained in that home for over two years. The trial court noted that the defendant continued to have substance abuse problems, to move frequently and live with various persons. The court further found that the defendant has not attempted to discover who or what caused T.D.'s injury and has not made any progress toward providing a permanent home for her daughter. The trial court concluded that the state had shown by clear and convincing evidence that the defendant was "unfit" to retain parental control of the child, that there was no reasonable expectation that she would reform based on the defendant's established pattern of behavior, and that in the best interest of the child, the defendant's parental rights should be terminated. The defendant appeals.

DISCUSSION

Parental Fitness
The defendant contends the trial court erred in finding her unfit to retain parental control of T.D. She asserts that the state failed to produce sufficient evidence to support the trial court's finding.
LSA-Ch.C. Art. 1015(5) addresses situations in which there has been a prior adjudication as a child in need of care and removal from the parental home. The state is required to establish that: (a) one year has elapsed since a child was removed from the parent's custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or an individual; (b) the parent is now unfit to retain parental control, and there is no reasonable expectation of reformation in the foreseeable future; and (c) the department has made every reasonable effort to reunite the child with her parents to no avail but now recommends that reunification would not be in the best interest of the child. LSA-Ch.C. Art. 1015(5).
In a termination of parental rights case, the state must prove the elements of Art. 1015(5) by clear and convincing evidence. LSA-Ch.C. Art. 1035. The evidence must allow the conclusion that termination is in the best interest of the child. LSA-Ch.C. Art. 1039; State in the Interest of A.M.M., 622 So.2d 1217 (La.App.2d Cir.1993). A trial court's factual determinations, including whether a parent is unfit and whether there is a reasonable expectation of reformation, will not be set aside in the absence of manifest error. State in the Interest of S.C. v. D.N.C., 26,104 (La.App.2d Cir. 6/22/94), 639 So.2d 426, writ denied, 94-1977 (La. 11/4/94), 644 So.2d 1061. State in the Interest of Q.P., 94-609 (La.App. 3rd Cir. 11/2/94), 649 So.2d 512.
The term "unfit" includes parents whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or an established pattern of behavior. LSA-Ch.C. Art. 1003(10)(c); State in the Interest of S.C. v. D.N.C., supra.
In the present case, the record shows that over one year had elapsed between the removal of the child from the defendant's custody and the state's filing of a petition for involuntary termination of parental rights. Thus, the state satisfied the requirements of Art. 1015(5)(a). At the termination hearing, Rae Byrd, the state protective service worker assigned to the defendant's case, testified that a primary requirement of the state's original case plan for returning T.D. to the defendant was the mother's ability to provide an adequate permanent home for her child. Ms. Byrd stated that although the mother said she understood and agreed with the plan, she continued to move frequently and reside with various people. On several occasions, *1080 the defendant moved from a residence without notifying the state. During April and May 1993, the defendant repeatedly refused to provide her new address and phone number to Ms. Byrd, who was thereby prevented from making home visits with the defendant. The nomadic lifestyle of the defendant persisted throughout 1993 and into 1994, despite being told that her unstable living arrangements were preventing progress toward the state's goal of reunification. Ms. Byrd testified that during the period from November 1992 until July 1994, the defendant had twenty different changes of residence and had lived with eighteen different persons.
The state worker reported that family visits were held once or twice a month to provide time for the mother to interact with her children and to practice the skills taught in parenting class. Ms. Byrd testified that after each class, she asked the defendant to relate what material was covered and what she had learned in class. One time, the mother said that the class discussed alternative methods of discipline, but she was unable to repeat those methods to Ms. Byrd or to say how the skills could be used in different situations. Ms. Byrd stated that during family visits, the defendant's interactions with her children did not demonstrate that she had learned skills for appropriate discipline or the protection of T.D. and A.W.
The state introduced expert testimony from Dr. Joe Ben Hayes, a psychiatrist, who saw the defendant in February 1994. Dr. Hayes stated that the defendant's behavior in frequently moving to various locations, living with different people, the lack of a stable income and lack of mature, consistent employment indicated a dysfunctional lifestyle, which was created by the mother's immature personality traits. Dr. Hayes concluded that unless the defendant took steps to change her dysfunctional lifestyle, it was highly unlikely that she would ever be in a position to provide a stable permanent home for T.D.
This court has previously found that evidence of a mother's behavior pattern, which included frequent residence changes, limited education, sporadic work history and brief romantic relationships, was sufficient to support a finding that the parent's behavior or conduct disorder made her unable or unwilling to provide an adequate home for the child. See In the Interest of J.L.N., 27,568 (La.App.2d Cir. 6/21/95), 658 So.2d 272. In the present case, the state introduced evidence of similar behavior by the defendant, including numerous changes of residence, successive brief romantic liaisons, inconsistent work history and continued marijuana use. The state also elicited expert testimony that the mother's unstable lifestyle was unlikely to change in the foreseeable future. Thus, evidence in the record establishes that the defendant's behavior or conduct disorder makes her unable or unwilling to provide an adequate permanent home for T.D. at the present time or in the reasonably near future. Consequently, we cannot say that the trial court was clearly wrong in finding that the state had proven by clear and convincing evidence that the mother is unfit to retain parental control. This assignment of error lacks merit.

Reformation
The defendant argues the trial court erred in finding that there was no reasonable expectation of the mother's reformation in the foreseeable future. The defendant asserts that she cooperated with state officials in most areas and was working toward reunification.
Reformation sufficient to prevent termination of parental rights requires that the parent demonstrate a substantial change, such as significantly altering or modifying that behavior which served as the basis for, and resulted in, the state's removal of the child from the home. State in the Interest of E.G., 95-0018 (La.App. 1st Cir. 6/23/95), 657 So.2d 1094, writ denied, 95-1865 (La. 9/1/95), 658 So.2d 1263.
Marcia McCall, director of the Women's Support Group conducted from June 1993 until April 1994, testified that the defendant attended a majority of the sessions and discussed her frequent moves and involvement with different men. Ms. McCall stated that when group members confronted the defendant by stating this pattern was not a positive way to live, the mother responded *1081 that it was how she survived. Ms. McCall reported that at the completion of the support group, the mother's lack of stability remained a primary factor hindering her chance for the return of the children. Ms. McCall testified that the defendant did not make any progress toward her need for stability during the ten months of group meetings, and did not seem motivated to follow through with actions necessary to accomplish reunification.
Dr. Hayes, the psychiatrist, opined that when a person continues a pattern of behavior, which does not improve their life, it is a strong indication that the individual is unwilling or incapable of changing. Dr. Hayes testified that when he suggested to the defendant that she be more cooperative and make changes in her behavior, she responded that she could not do anymore.
Dr. Hayes also testified that generally a person must first seek treatment for substance abuse before addressing a personality disorder. He stated that a person needs to be sober and drug-free for a certain period of time in order to handle the psychological upheaval that occurs when making lifestyle changes. The defendant submitted to three random drug tests, all of which were positive for the chemical THC found in marijuana. The state referred the defendant to several alternative substance abuse treatment programs, but the defendant persistently refused to seek any such treatment. During a two-year period, the defendant had not improved her situation nor significantly modified her pattern of behavior. The defendant's refusal to seek substance abuse therapy further casts doubt on any reasonable expectation of the mother's reformation in the future. Therefore, we cannot say that the trial court was manifestly erroneous in finding that there is no reasonable expectation that defendant will reform in the foreseeable future. This assignment of error lacks merit.

Reunification Efforts
The defendant argues the trial court erred in finding that the state made reasonable efforts to reunite the child with her parent and that reunification would not be in the best interest of the child. The defendant first contends the state's plan imposed an unreasonable condition of requiring the mother to admit she knew the cause of T.D.'s injury.
The medical evidence indicated that the child was seriously injured while in the care of the defendant. The pediatrician who operated on the child opined that the wound was intentionally inflicted. However, the cause of T.D.'s injury was never adequately explained. Although the child's step-sister, A.W., once confessed to accidently injuring the child, she later recanted and the defendant at one time reportedly expressed a belief that A.W. did not really cause the injury. The state's concern about identifying the perpetrator of the serious injury to T.D., and the expectation that the mother would actively assist in obtaining the information, were not unreasonable.
The defendant also contends the state unreasonably required the mother to take additional parenting classes after attending eight previous sessions. Ms. Byrd testified that additional parenting classes were necessary because the mother was unable to explain the material presented in the classes, or to apply the skills taught to her own situation. Apparently, the purpose of the parenting course was to help the mother learn more effective parenting skills, and not merely to attend a specific number of classes. The state attempted to provide the defendant with another opportunity to improve her parenting skills by referring her for an additional six classes. This requirement was not unreasonable.
Finally, the defendant complains that the state unreasonably limited the mother's visitation with the child. Family visits were held twice a month from April 1993 through January 1994, when it changed to one visit per month. One family visit was canceled because of defendant's delay in obtaining certification that she had received medical treatment for head lice. The mother was forty minutes late for the two visits following the state's decision to continue working toward reunification for another six months. The mother then brought other adults with her on the following two family visits, despite *1082 being told additional visitors were not allowed because they prevented her from directly interacting with her children. Moreover, there is no indication that the mother requested additional visits. As shown by regular reports introduced into evidence, the state initially recommended reunification of the family. The record reflects the state's efforts to reunite the mother with her child during a period of two years. However, the defendant has failed to secure permanent housing, has not demonstrated adequate parenting skills, and has consistently refused to seek drug abuse treatment. T.D. has been in the same foster home since August 1993. After reviewing the record, we find that the trial court was not clearly wrong in concluding that the state proved by clear and convincing evidence that it made every reasonable effort to reunite the child with the mother to no avail, and that termination of parental rights is in the best interest of the child. This assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court terminating the mother's parental rights is affirmed.
AFFIRMED.