LKLEES, Chief Judge.
This is a suspensive appeal from a judgment of the trial court terminating a mother’s parental rights to her eleven children. Finding no manifest error in the trial court’s determination, we affirm.
FACTS
E.J.[1] is the mother of eleven children ranging in ages from 1 year to 17 years. The eight oldest children were placed in the custody of the State of Louisiana on October 28, 1992, and were adjudicated to be children in need of care on March 30, 1993 by the Juvenile Court for the Parish of Orleans. Two of the children were returned to the mother’s care on April 14, 1993, but came back into the State’s custody on May 25, 1994. A petition for termination of E.J.’s parental rights was denied on February 19, 1995. On November 16, 1995, the ninth child was placed in State custody and was adjudicated a child in need of care on January 24,1996.
The State of Louisiana filed the instant petition for termination of parental rights on May 28, 1997 against E.J. and the alleged fathers of these children. The | State alleged in the petition that the parents are unfit to retain parental control under the provisions of the Louisiana Children’s Code because of consistent failure to provide necessary food, clothing, appropriate shelter, and health or medical treatment for the children. The State further alleged that the parents have a behavior/conduct disorder or substance abuse/chemical dependency problem which makes them unable or unwilling to provide an adequate permanent home for the children. The State further claimed that the parents have shown no significant substantial indication of reformation, or reasonable expectation of rehabilitation, and are unlikely to reform in the foreseeable future. The State filed an amended petition on October 19, 1997, alleging an additional basis for termination of E.J.’s parental rights based on her incarceration for criminal conduct. This matter was heard in two hearings, on April 23, 1998 and July 27, 1998.
The trial judge terminated E.J.’s parental rights on July 27, 1998, and subsequently signed a written judgment on August 5, 1998. E.J. now suspensively appeals from this judgment.
The issues raised are whether the State carried its burden of proof under the appli *110 cable provisions of the Children’s Code and whether the judgment of termination was manifestly erroneous.
DISCUSSION
Termination of parental rights is a severe and irrevocable action. State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d 1809 (La.1998). In a termination of parental rights case, the State must prove all the elements of its case by clear and | ^convincing evidence. La. Ch.C. art. 1035; State in the Interest of L.L.Z. v. M.Y.S., supra. The evidence must allow the conclusion that termination is in the best interest of the child. State In the Interest of D.T. v. K.T., 29,796 (La.App. 2 Cir. 6/18/97), 697 So.2d 665, 668.
A trial court’s factual determinations, including whether a parent is unfit and whether there is a reasonable expectation of reformation, will not be set aside in the absence of manifest error. State In the Interest of T.D. v. Webb, 28,471 (La.App. 2 Cir. 5/8/96), 674 So.2d 1077.
At the time the State’s petition was filed, La. Ch. C. art. 1015 provided the grounds for the involuntary termination of parental rights and stated that the grounds set forth in the petition must meet all of the conditions in the enumerated paragraphs. The State alleged that E.J.’s parental rights should be terminated pursuant to paragraphs (4), (8), and (9) of that article. Paragraph (4) provided in part as follows:
(4) Prior adjudications as a child in need of care
(a) One year has elapsed since a child in need of care adjudication.
(b) The parent is unfit to retain parental control.
(c) The parent has shown no significant, substantial indication of reformation, and there is no reasonable expectation of his reformation in the foreseeable future.
Section 4(c) requires that the State show that there is no reasonable expectation of reformation in the foreseeable future. Reformation sufficient to prevent termination of parental rights requires that the parent demonstrate a substantial change, such as significantly altering or modifying that behavior which served as the basis for, and resulted in, the State’s removal of the children from the |4home. State in the Interest of T.D. v. Webb, supra; State In the Interest of D.T. v. K.T., supra, 697 So.2d at 670.
Section 8 of Article 1015 provided a basis for termination where the child has been deserted by the parent for a period of at least four months, the parent has made no provision for the child’s care and support, and the whereabouts of the parent is unknown. Section 9 authorizes termination of parental rights where the child has been abandoned by the parent for at least four months and the parent has failed to provide for the child’s care and support without just cause.
By the amended petition, the State sought termination pursuant to Article 1015(5), as amended by Acts 1997, No. 256, § 1, which provides:
Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child, and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his needs for a stable and permanent home.
Further, the State in its amended petition referred to Article 1036(D)(2) which provides:
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evi *111 denced by one or more of the following:
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the Ifiimmediate and continuing physical or emotional needs of the child for extended periods of time.
Following the hearing in this matter, the trial court stated that it found a lack of significant or substantial indication of the mother’s reformation or of a reasonable expectation of her reformation in the reasonable future. Of significance to the trial court was the mother’s lack of desire to comply with her case plan.
The testimony of EJ.’s caseworkers indicates that the State’s case plan for E.J. required her to obtain a psychological evaluation, attend therapy and parenting classes, seek drug screening, maintain stable housing and comply with the visitation with her children.
At trial, the State presented the testimony of Katherine Franklin who was E.J.’s case manager from October 1995 to September of 1996. Ms. Franklin stated that at the time she was assigned to the case, there was a court-ordered suspension of the mother’s visitation privileges pending medical clearance for lesions appearing on E.J.’s skin. The State wanted to rule out a diagnosis of syphilis or other contagious condition prior to reinstating the visitation.
Ms. Franklin stated at trial that she offered various forms of assistance to E.J. to help her comply with her case plan and that she attempted to locate E.J. at her given address many times dining her management of the case but was unable to contact E.J. On the occasions when Ms. Franklin found E.J. at home and attempted to encourage her to comply with the requirements of her case plan, E.J. refused to accompany Ms. Franklin. Ms. Franklin testified that she gave bus | fitokens to E.J. to go for drug screening and for therapy, but that E.J. did not keep the appointments.
Ms. Franklin testified that E.J. did not comply with any of the requirements of the case plan during her tenure as case manager. Although E.J. attended parenting classes in 1994, the children were removed from her care a second time in 1995 and the court ordered E.J. to attend the parenting classes a second time. E.J. did not comply with this order. Further, Ms. Franklin testified that there was nothing in the State’s file indicating that E.J. obtained medical clearance based on her skin condition and thus the suspension of visitation was maintained. Ms. Franklin also testified that the parents of the children did not maintain contact with the State or inquire about the status of the children while they were in the custody of the State.
Jennifer Keelan also testified on behalf of the State. Ms. Keelan became the case manager for EJ.’s children following the tenure of Ms. Franklin. Ms. Keelan testified that she discussed the State’s case plan with E.J. and E.J. agreed to comply, but she did not comply. Ms. Keelan also stated that she attempted to contact E.J. at the address in the file, but was unable to locate E.J. Ms. Keelan testified that E.J. did have a drug screening on February 3, 1997, but the drug test was positive.
Jovanka Clayton testified that she had been the case manager for E.J. from August of 1997 until the trial in July of 1998. She stated that she attempted to call E.J., and that E.J. called her in August of 1997 to advise that she was incarcerated. 17She stated that E.J. did not comply with her case plan, even though she advised her that there were elements she could comply with while she was incarcerated.
E.J. stated at trial that she was present in court on two occasions when the court set forth her case plan. She contended that she complied with the requirement to attend parenting classes, and presented a certificate from the YWCA to evidence her compliance. She did not recall whether the court issued a second order to attend parenting classes. She also testified that *112 she attended therapy, 'but was unable to continue because she did not have transportation to get to the appointments. E.J. admitted that Ms. Franklin came to get her in January and February of 1996 to obtain drug screening tests, but testified she could not go on either occasion because her house had been broken into on both dates and she was waiting for someone to arrive for an investigation.
E.J. further claimed that her visitation privileges with her children were suspended until she could obtain medical clearance that her skin condition was not contagious or harmful to her children. E.J. testified that she obtained medical clearance from her physician in July of 1996 that she presented to the State on the same date. She testified that she was never diagnosed with syphilis.
Based on the evidence presented, we fail to find that the trial court erred in "finding a sufficient basis for the termination of this mother’s parental rights. The record indicates that E.J. faded to comply with her case plan that was established by the State although E.J. was well aware of the requirements. The record indicates that she did not attend therapy or parenting classes as ordered by the 18court, and her testimony regarding a lack of transportation was contradicted by the State’s caseworker. Further, E.J. refused to cooperate with drug screening, and when she finally complied in 1997, the drug test was positive for cocaine. The trial court rejected E.J.’s contention that she could not attend the drug screenings because her house had been broken into on both occasions when the caseworker came to pick her up.
The record further indicates that E.J. did not comply with the visitation provisions of her case plan. Although her visitation privileges were suspended in 1995 based on a medical condition, she did not obtain medical clearance until one year later in July of 1996, and whether she informed the State of the clearance at that time is disputed. Nevertheless, the record indicates that E.J. failed to contact the State during this time to inquire about her children. The trial court further rejected EJ.’s claims that the State failed to facilitate visitation with her children during her incarceration. Rather, the trial court concluded that E.J. failed to adequately comply with her case plan and failed to put forth sufficient effort to indicate that she would reform in the future.
We have carefully reviewed the entire record in this matter, and we find no manifest error in the trial court’s determination to terminate E.J.’s parental rights. The record indicates that the children were in the custody of the State for almost five years and during this time period, E.J. failed to comply with even the most basic requirements of her case plan for reuniting with her children. In fact, at the time of the hearing in this matter, E.J. was incarcerated and had no specific plans 19for the provisions for her children upon her release. We find sufficient evidence in the record to support a finding that E.J. was unfit to retain parental control and that she had shown no significant, substantial indication of reformation in the future. We therefore conclude that the State proved by clear and convincing evidence all of the elements set forth under the pertinent provisions of the Children’s Code.
CONCLUSION
For the foregoing reasons, we find the evidence presented by the State of Louisiana meets the established strict legal standards for terminating the mother’s parental rights to these eleven children. We find no manifest error of the trial court in its factual determinations. The judgment of the trial court is therefore affirmed.

AFFIRMED.

. The initials of the parties in this case will be used to protect their identity.