| T PEATROSS, J.
This appeal arises from the judgment of the trial court terminating the parental rights of the natural mother, Donna Renee Brown, to her minor child, A.N.B., and certifying the minor child for adoption. The mother appeals. For the reasons stated herein, the judgment of the trial court is affirmed.

FACTS

On July 31, 1997, A.N.B. was placed in the custody of the Department of Social Services (“Department”) by oral instanter order. At the time of the order, A.N.B. was approaching 19 months of age. The affidavit supporting the oral instanter order alleged medical neglect and lack of supervision. Specifically, the affidavit stated that the mother did not have a home or any source of income, resulting in the child being left with many different people. Additionally, the child had a neck injury, the source of which was unknown to the mother. A.N.B. was subsequently examined by a doctor who could not determine the source or cause of the injury, but noted medical neglect. Initially, the mother wanted to surrender the child, but changed her mind and decided to work with the Department to regain custody of her daughter.
On September 23, 1997, A.N.B. was adjudicated a child in need of care. The initial case plan goal for the family was reunification.[1] The individual goals for the mother were: (1) attend parenting classes and demonstrate the skills learned; (2) obtain suitable employment and education to secure the employment; *415 (3) remain drug and alcohol free and demonstrate this; (4) visit with A.N.B. and support her placement; (5) keep the agency informed of her whereabouts and progress; and (6) refrain from criminal activities. After more than one and a half years of attempting, unsuccessfully, to “work with” the mother toward reformation band reunification, the Department filed a petition to terminate the mother’s parental rights on the grounds that the mother failed to substantially comply with the case plan, including failure to consistently attend parenting classes and an inability to demonstrate skills learned in the classes she did attend. The petition stated that the mother had moved several times during the previous year and a half and did not have a stable residence. Additionally, the mother failed to consistently attend job skills training and had not been successful in retaining a job. Despite the Department’s offer of transportation, the mother missed approximately 20 percent of her visits with A.N.B. and quickly became bored during the visits she did attend. Due to the lack of cooperation and completion of the case plan, the Department argued that it was in the best interest of the child that the mother’s parental rights be terminated and that the child be freed for adoption. At the time the petition was filed, A.N.B. was approximately three years old and had been in the custody of the state for almost 18 months.
Trial of the matter was held on May 11, 1999. Karen Hendry, a child protection investigator who had been assigned to the case, testified regarding the initial investigation. Ms. Hendry testified that the cause of the child’s injury, the mark on her neck, which was thought by the doctor to be a burn, was not determined and that the mother did not seem to know how it had occurred. Ms. Hendry also related the circumstances of the mother and her lack of supervision and care of the child as described in the affidavit supporting the oral instanter order, specifically stating that the mother would leave the child with other people for days at a time without checking on her. Ms. Hendry further indicated that the mother initially wanted to surrender the child, but later changed her mind and decided to work with the Department toward reunification.
Tracy Hoggatt, the case manager, testified that the mother had lived in approximately 11 different places during her involvement with the case and had |3had relationships with at least three different men. She also testified that the mother missed opportunities for Department transportation to counseling and visitation sessions and appeared bored during visits with her daughter. According to Ms. Hog-gatt, the mother requested shorter visits and afternoon visits because she would not wake early enough for morning visits.
Ms. Hoggatt further testified that Randy Lee, to whom the mother was married in April 1999, did not appear interested in participating in the case plan until trial. She also indicated that there may be problems with drug use in Mr. Lee’s past; and, while he did consent to a drug screen, it took months to get that accomplished. Both Mr. Lee and his mother testified and indicated a desire and willingness to assist the mother in raising the child.
Finally, Ms. Hoggatt testified that there was no evidence of drug use or criminal activity on the part of the mother; however, the mother refused, or avoided, being drug tested. It was Ms. Hoggatt’s opinion that there had not been sufficient reformation to return the child to the mother.
During her testimony, the mother admitted that she had had scanty employment, had lived in different places and had failed to keep the Department apprised of her whereabouts during the year and a half prior to the filing of the petition to terminate her rights. She did testify, however, that her marriage had given her a stable home and that she wanted to regain custody of her daughter.
*416 Pursuant to the request of the mother, the court ordered a psychological evaluation and heard testimony from Dr, Bobby Stephenson, an expert in the field of psychology. Dr. Stephenson testified that he evaluated the mother in order to determine her capability of being a parent to her daughter. Dr. Stephenson testified that, according to tests, the mother functions as a 19-year-old, mildly retarded individual. She also suffers from anxiety, much of which has been caused by the situation with her daughter. She has difficulty in terms of processing [ information dealing with everyday events, problems with judgment, weaknesses in terms of attention, has little ability to be flexible and adaptable and has problems learning and being able to apply what she has learned. Dr. Stephenson further testified that the mother has difficulty following through with a plan and seems to be a person who tends to become very dependent upon people and, as a result, gets involved in situations where she looks to others to care for her and could be subjected to abuse. Additionally, Dr. Stephenson testified that the mother is immature, dependant, has difficulty in terms of understanding who she is and what her abilities are, has disturbance in terms of identity, is at risk for substance abuse, tends to be passive and excessively relies on others. The mother seems to understand what children need, but her passivity and inadequacy interfere with her making that kind of commitment. Dr. Stephenson opined that the mother lacks the ability to do what is in her daughter’s best interest and to provide for her on a continuing basis; instead, the mother would likely be neglectful.
Dr. Stephenson also evaluated A.N.B. and found her to be a bright child who was emotionally attached to her foster mother. He testified that, while A.N.B. knows her natural mother, she has no emotional attachment to her. Dr. Stephenson opined that A.N.B. cannot wait for her natural mother to mature and deserves parents now.
On September 2, 1999, the trial court entered a judgment terminating, totally and irrevocably, the parental rights of both the mother and father to A.N.B. In its judgment, the trial court specifically found that the requirements of La. Ch.C. art. 1015(5) had been satisfied by clear and convincing evidence and that the best interest of the minor child required that the relief sought by the Department be granted.

\ .DISCUSSION

In a termination of parental rights case, the State must prove all the elements of its case by clear and convincing evidence. La. Ch.C. art. 1035; State in Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993); State in the Interest of D.T. v. K.T., 29,796 (La.App.2d Cir.6/18/97), 697 So.2d 665. The evidence must allow the conclusion that termination is in the best interest of the child. State, in the Interest of D.T., supra.
A trial court’s factual determinations, including whether a parent is unfit and whether there is a reasonable expectation of reformation, will not be set aside in the absence of manifest error. State, in the Interest of D.T., supra; State in the Interest of T.D. v. Webb, 28,471 (La.App.2d Cir.5/8/96), 674 So.2d 1077. Great weight is attached to the exercise of the trial judge’s discretion, which will not be disturbed on review if reasonable men could differ as to the propriety of the trial court’s action. The discretion afforded the trial court, however, must be exercised in whole-hearted good faith and be guided by the statutes, not by what the court’s private opinion of what the statute ought to be. Where the exercise of discretion is arbitrary and not judicial, and the judgment is unjust, it will be set aside. State v. Talbot, 408 So.2d 861 (La.1980) on rehearing; State, in the Interest of D.T., supra.
La. Ch.C. art. 1015 provides the grounds for the involuntary termination of parental *417 rights. As previously stated, the trial court found that termination was proper under subsection (5) of article 1015 which reads as follows:[2]
(5)Unless sooner permitted by the court, at least one calendar year has elapsed since a child was removed from the parent’s custody [ (¡pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a stable and permanent home.
The substantive elements proving lack of substantial compliance with a court-approved case plan are set out in La. Ch.C. art. 1036(C):
C. Under article 1015(5), lack of parental compliance with a case — plan may be evidenced by one or more of the following:
(1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4) The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.
(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.
(7) The persistence of conditions that led to removal or similar potentially harmful conditions. (Emphasis added.)
The substantive elements proving lack of a reasonable expectation of significant improvement are set out in La. Ch.C. art. 1036(D):
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert 17opinion or based upon an established pattern of behavior.
(2) A pattern of repeated incarceration of the parent that has rendered the parent unable to care for the immediate and continuing physical or emotional needs of the child for extended periods of time.
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior. (Emphasis added.)
The dispute in the present case turns on the sufficiency of evidence presented by the Department as to whether, under arti- *418 ele 1015(5), the -mother' substantially complied with the court-approved case plan.[3] It is the mother’s position that the testimony elicited at trial is insufficient to support termination of her parental rights.. As previously stated, the case plan goals were: (1) parenting classes; (2) obtaining employment; (3) no drug and alcohol use; (4) visits with the child; (5) informing the Department of her whereabouts; and (6) no criminal activity. The mother testified that she moved on three occasions. While the Department places great emphasis on this factor, the mother argues that her relocations were not shown to be detrimental to the child. Further, she argues that she did substantially comply with the requirement of attending parenting classes, as is evidenced by her certificate of completion and the testimony at trial. Next, the mother points out that the Department agreed that she had complied with the two requirements concerning alcohol and drug use and criminal activity. Regarding education and employment, the mother asserts that she attempted to |Rsatisfy these requirements and had married Mr. Lee, who was gainfully employed. Finally, the mother notes that she did visit with her daughter. In summary, the crux of the mother’s argument is that she now has a stable residence, is married and has family members to assist her in raising her daughter.
Relying on article 1036, the Department asserts that the mother, by her own admission, failed to substantially comply with the case plan. While she did make some improvement, the Department asserts that it is “too little, too late” as the child has been in foster care for nearly two years. The Department argues that not only has it met its burden of proving that one area of the case plan was not substantially eom-plied with, but has proven that several areas were not complied with by the mother. Furthermore, the Department asserts that, under La. Ch.C. art. 1036(B), the conduct of the mother has indicated that she is unable to provide an adequate permanent home for the child; and, therefore, there is a lack of reasonable expectation of reformation in the near future.
After careful consideration and mindful of the manifest error standard under which we review the trial court’s findings, we are constrained to agree with the Department. First, as outlined earlier in this opinion, the mother has a history of failing to comply with the dictates of the case plan. A parent who professes an intention to exercise his or her parental rights and responsibilities must take some action in furtherance of the intention to avoid having those rights terminated. State in the Interest of S.M., et al, 98-0922 (La.10/20/98), 719 So.2d 445; State, in the Interest of D.T., supra; State in the Interest of Four Minor Children v. D.W., 585 So.2d 1222 (La.App.2d Cir.1991). In this case, the mother failed to keep the Department apprised of her whereabouts and fell short of the goals regarding counseling and job training sessions. Furthermore, she missed approximately 20 percent of the scheduled visits with A.N.B. and was nonparticipatory in the visits she did attend. Even with her recent marriage, the mother has failed to make | flany significant strides at meeting the goals which would allow her to reunify her family.
Second, the evidence offered through the testimony and report of the expert psychologist, Dr. Stephenson, supports the conclusion that the mother is “unable ... to provide an adequate permanent home *419 for the child.” La. Ch.C. art. 1036(D)(3). Significantly, according to Dr. Stephenson’s report, which was conducted at the mother’s request, she may never be at the point where she can be a mother who can properly raise and protect her daughter. On this record, we cannot say that the trial court’s determination that the Department satisfied, by clear and convincing evidence, the requirements of La. Ch.C. art. 1015(5) was manifestly erroneous.
Finally, we believe that the record amply supports the finding that it is in A.N.B.’s best interest that she be certified for adoption and given the opportunity to have a family. We would be remiss if we did not recognize that the mother seems to have made some positive changes; however, viewing the conflicting testimony at trial, we believe that the trial court was well within its wide discretion in terminating her parental rights and certifying A.N.B. for adoption.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the mother, Donna Renee Brown, to the extent she is financially able. See La. Ch.C. art. 321.
AFFIRMED.

. The case plan was designed to facilitate reunification with the mother only, as the status of the natural father was unknown at that time. We also note that the father is not a party to this proceeding as he voluntarily relinquished all parental rights to A.N.B. pri- or to the appeal.

. La. Ch.C. art. 1015 was revised in 1997. Such revision resulted in former subsections (4) and (5) being combined to create post-revision subsection (5). The comments to the article indicate that the revision was an effort to correct an inconsistency in the two subsections, though each subsection was intended to address the situation where the child had been removed from the parental home and reasonable efforts of the Department toward reunification and reformation were unsuccessful.

. As a preliminary matter, we note that it is undisputed that one year elapsed from the removal of the child from the parental home until the filing of the petition for termination of parental rights. A.N.B. was removed from the parental home in July 1997, was adjudicated as a child in need of care in September 1997 and the petition for termination of parental rights was filed in February 1999. The record clearly establishes that, at the time the petition for termination of parental rights was filed, A.N.B. had been in the custody of the Department, pursuant to a court order following a child in need of care proceeding, for a period in excess of one year.