JiPER CURIAM.
This action involves the involuntary termination of parental rights in connection with the determination of the availability of two minor children for adoption. On July 30, 1996, R.H. and J.H. filed a motion and order for appeal from the judgment of July 25, 1996, terminating their parental rights to D.S. (DOB: 9/14/86) and D.H. (DOB: 9/17/87).
On April 24, 1996, a petition for termination of parental rights was filed by the State of Louisiana, through the Department of Social Services (DSS), alleging as grounds for terminating the parental rights of R.H. and J.H. those enumerated in La.Ch.C. art. 1015(4), (5) and (7).
La.Ch.C. art. 1015 provides in pertinent part:
The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:
[[Image here]]
(4) Prior adjudications as a child in need of care
(a) One year has elapsed since a child in need of care adjudication.
(b) The parent is unfit to retain parental control.
(c) The parent has shown no significant, substantial indication of reformation, and there is no reasonable expectation of his reformation in the foreseeable future.
(5) Prior adjudication as a child in need of care and removal from the parental home.
(a) One year has elapsed since a child was removed from the parent’s custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.
(7) Loss of custody due to the parent’s condition.
(a) One year has lapsed since a court order placing the child in the custody of the department.
*329 (b) The child was removed from the custody of his parents because of the parent’s mental illness, mental retardation, or substance abuse.
|2(c) The parent’s condition continues to render the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm.
(d) Despite notice by the department, the parent has refused or failed to provide a plan for the appropriate care of the child other than foster care.
(e) Every reasonable effort has been made under the circumstances to rehabilitate the parent, and such efforts have failed.
(f) There is no reasonable expectation that the parent’s condition will change or that he will be rehabilitated in the foreseeable future.
(g) According to expert testimony or proof of an established pattern of behavior, termination of parental rights and adoption are in the child’s best interest.
La.Ch.C. art. 1003(10) defines “unfit” as behaviors or conditions of a parent:
(a) Who has abused a child by inflicting physical or mental injury which causes severe deterioration to the child, or who has sexually abused, exploited, or overworked a child to such an extent that his or her health or moral or emotional well-being is endangered.
(b) Who has consistently refused to provide reasonably necessary food, clothing, appropriate shelter, or treatment either by medical care or other health services in accordance with the tenets of a well-recognized religious method of healing with a reasonable proven record of success. Financial inability alone shall not constitute grounds for termination of parental rights.
(c) Whose medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse, or chemical dependency makes the parent unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
On appeal, R.H. and J.H. contend the State failed to prove by clear and convincing evidence the grounds set forth in La.Ch.C. art. 1015(4), the trial court’s ruling was based on hearsay evidence, and statements of the children were induced by suggestion and repeated questioning about alleged acts of abuse.
On September 14, 1993, D.S. and D.H. were adjudicated “Children in Need of Care” in juvenile proceeding Docket No. J-93-103 in Bogalusa City Court, Parish of Washington, Louisiana and have remained in the legal custody of DSS continuously to the present time. The record is clear and supports the fact that one year has elapsed since D.S. and D.H. were adjudicated children in need of care.
Dr. Joan Curtis, an emergency room physician, was accepted by the court as an expert in two fields of medicine as well as having particular interest, expertise and knowledge in the field of investigating and interviewing cases involving sexual abuse.
|sDr. Curtis testified she examined both of the children, at the request of the Office of Community Services (OCS), on September 13,1993. At this time, the children were six and seven. The physical examination of D.S. produced no abnormal findings. However, the physical examination of D.H. produced a Class 3 finding which is strongly suggestive of sexual abuse. D.H. also identified her father as the perpetrator.
Dr. Clifford Crafton, a child psychiatrist, began treating D.S. in February 1994. Dr. Crafton testified that D.S. “did not express so much fear as he just did not want to have much contact with his family”, particularly his father. Dr. Crafton opined D.S. incurred physical abuse as well as neglect.
Dr. Crafton began treating D.H. in April 1994, and subsequently treated her three or four times that year. Dr. Crafton testified that in August of 1994, D.H. began exhibiting bizarre behavior and was admitted to a psychiatric hospital. D.H. remained hospitalized from August 26, 1994 until November 4, 1994. Dr. Crafton indicated the primary rea *330 son D.H. was hospitalized was depression. He testified D.H. was also experiencing oppositional behavior, having difficulty at school and not sleeping well. In addition, Dr. Craf-ton testified D.H. was in foster care at that time and had requested that some of the other girls have sexual relations with her. On one occasion, D.H. had actually gotten into the bed of another foster home resident.
Dr. Crafton ultimately diagnosed D.H. as having post traumatic stress disorder, attention deficit disorder and major depression. Based on his treatment and evaluations of D.H., Dr. Crafton testified it was his opinion D.H. was sexually and physically abused and/or neglected by her father.
Dr. Valerie Turgeon, a psychologist, evaluated both the parents and children. Dr. Turgeon saw each parent twice, the mother on October 26,1993 and January 8,1996, and the father on November 8, 1993 and January 8, 1996. Dr. Turgeon initially saw the children on October 17, 1993 and approximately three months later, was asked to see them in therapy.
Dr. Turgeon testified D.S. described his life in his family as physically abusive. Dr. Turgeon stated D.S. spoke of his father coming in drunk regularly and hitting him. When asked what his mother did when this occurred, D.S. stated, “she just let him.” Dr. UTurgeon testified that during a regular session with D.S., on June 28, 1994, D.S. told her of being locked in the bedroom with his parents and D.H. Dr. Turgeon also testified D.S. told her his parents would lock them (D.S. and D.H.) into the bathroom and he would have to watch his parents take a bath together, “hump” each other or they would touch his “talley,” the name he gave his penis. Dr. Turgeon further testified D.S. told her his older sister had also touched him on the “talley” and sometimes R.H. would “do it” to D.H., “in the booty and the vagina.”
On one occasion, when Dr. Turgeon showed a simple line drawing to D.H. and asked her to make a mark where her father had touched her, D.H. indicated the mouth, the breast, the genitals and the rectum. Dr. Turgeon testified D.H. said her father had touched her there with his lips and his hands.
Dr. Turgeon testified she first saw J.H. on October 26, 1993. After interviewing and evaluating her, Dr. Turgeon concluded J.H. had characterological features associated with character disorders or antisocial personality disorders, namely, impulsivity, poor judgment, egocentricity, low frustration tolerance and irritability. Dr. Turgeon also described J.H. as being manipulative, unreliable and irresponsible. Dr. Turgeon testified that at the October 26th meeting, J.H. stated that she initially did not believe D.H.’s allegations but because of Dr. Curtis’ report, changed her mind. However, during a subsequent visit, J.H. later recanted stating no abuse ever occurred.
Dr. Turgeon first saw R.H. on November 8,1993 for an interview and evaluation. Her diagnosis of R.H. was somatization disorder, general anxiety disorder and passive aggressive personality disorder. Features most associated with that particular profile are immaturity, self-centeredness, poor judgment, low frustration tolerance and aggressiveness. Dr. Turgeon testified R.H.’s response to the allegations were rationalization and denial. Dr. Turgeon testified R.H. denied he had any kind of drinking problem, continued to drink while going to AA, and denied he had ever beat his child or his son or molested his daughter.
Appellants contend the trial court erred in allowing hearsay evidence of alleged sexual molestation, abuse and drinking. Appellants argue an objection was made to Dr. Curtis’ testimony that Daisy reported various sexual activities to her. The objections that ^appear in the record concern hearsay testimony, which was sustained, and testimony about the sexual conduct of the home, which was overruled. An error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and when the ruling is one admitting evidence, a timely objection appears of record, stating the specific ground of the objection. La.C.E. art. 103(A)(1). No objection was made as to Dr. Curtis’ testimony concerning her finding of a defective hymen and trauma to D.H.’s vaginal area. An *331 objection not made to testimony is considered waived.
Appellants further argue Dr. Curtis’s testimony did not fall with the hearsay exception of La.C.E. art. 803(4) because she examined D.H. but did not treat her. La. C.E. art. 803(4) allows an exception for statements made for the purposes of medical treatment and medical diagnosis in connection with treatment. Although Dr. Curtis’ examination of D.H. was to determine whether D.H. had been sexually abused, the examination also supplied Dr. Curtis with critical information so that she might recommend various types of treatment for D.H. Thus, Dr. Curtis’ testimony falls within this exception.
Counsel for appellants cross examined the experts mentioned above on the issue of suggestion or repeated questioning of the children about the alleged acts of abuse. Although all agreed on the suggestibility of children, none of the experts’ testimony indicated the children had been subjected to repeated questioning and/or suggestion.
Whether there has been adequate proof that R.H. and J.H.’s conduct constituted abuse, whether R.H. and J.H. are unfit, showed no significant indication of reformation, are mentally ill, mentally retarded or substance abusers and whether the State made every reasonable effort to reunite the children with them, are questions of fact.
On review, factual findings of the trial court in determining whether the requirements of a particular paragraph have been satisfied will not be set aside in the absence of manifest error. State in the Interest of EG, 96-0018 (La.App. 1 Cir. 6/23/95); 657 So.2d 1094, 1096, writ denied, 95-1865 (La. 9/1/95); 658 So.2d 1263.
leThe trial court found, after considering the complete record, testimony offered and the evidence introduced, it was in the best interest of these two small children to permanently terminate any rights and relationship with R.H. and J.H.
After a thorough review of the record before us, we cannot say the trial court was manifestly erroneous (clearly wrong) in its determination that the allegations of the State’s petition, setting forth the grounds for involuntary termination of parental rights enumerated in La.Ch.C. art 1015(4), (5) and (7), were proven by clear and convincing evidence. Therefore, the trial court properly terminated R.H. and J.H.’s parental rights as to D.S. and D.H.
For the foregoing reasons, the judgment of the trial court terminating the parental rights of R.H. and J.H. in relation to D.S. and D.H. is affirmed. D.S. and D.H. are now eligible and available for adoption. R.H. and J.H. are cast for the costs of this appeal.
AFFIRMED.