704 So.2d 314 (1997)
STATE of Louisiana In the Interest of B.K.F.
No. 97-CA-572.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 1997.
Writ Denied February 20, 1998.
*315 Evangeline G. Abriel, Johanna Arias, New Orleans, for Defendant/Appellant C.F.
Angela Neal Richard, State of Louisiana, Department of Social Services, Office of Community Services, New Orleans, for Plaintiff/Appellee State of Louisiana, Department of Social Services, Office of Community Services.
Before BOWES, GRISBAUM and CANNELLA, JJ.
BOWES, Judge.
C.F., the mother of the minor child, B.K.F., appeals from a decision of the Juvenile Court which terminated her parental rights. We affirm.

FACTS
C.F. is a 28 year old woman who has been diagnosed with severe chronic undifferentiated schizophrenia. On September 27, 1995, she gave birth to the minor child B.K.F. At the time of the birth of the child, she was hospitalized at Southeast Louisiana Hospital. On September 28, 1995, B.K.F. was taken into the custody of the state and placed in foster care, where he remained at the time of the termination hearing. The plan at that time was to allow B.K.F. to remain in foster care until he could be freed for adoption, with the proviso that if either parent experienced a sufficient change in his or her mental condition, the plan would be rewritten to work toward reunification. B.K.F. was adjudicated a child in need of care on January 30, 1996.
In December of 1995, C.F., the mother, was released from Southeast Louisiana Hospital and she was enrolled in the Management and Rehabilitation for Schizophrenia program (MARS), and went into SMART, a group home environment for persons with schizophrenia. At the time she entered the home, C.F. was unable to take care of her basic needs, such as bathing and personal hygiene. The home worked with C.F. for approximately two months, after which time she showed some improvement. At that time, B.K.F. had been in foster care for six months.
At that time, the State of Louisiana, Department of Social Services, Office of Community Services (hereinafter "OCS") asked the Infant Mental Health Team[1] to complete an evaluation of C.F. The team conducted an extensive evaluation procedure, and also provided parenting classes to C.F. The Infant Team conducted its evaluation and recommended *316 that OCS proceed with the termination of parental rights. The results of the evaluation showed that C.F. did not possess the skills to independently care for herself, nor to take care of a child. Her progress had been extremely slow, and her retention skills were poor. Thus, the team concluded that it seemed unlikely that C.F. would develop the skills to care for her child any time in the near future, and that it would not be in the best interest of the child to be returned to C.F.
The Infant Team also found that the child had bonded well and was thriving with the foster parents.
OCS filed a petition for termination of parental rights on October 10, 1996, pursuant to the provisions of La. Ch.C. art. 1004 and art. 1015. The district attorney's office joined in the filing of the petition on February 20, 1997.
Counsel for C.F. filed two motions to dismiss the termination proceedings, one for failure to comply with Ch.C. art. 1004 and one for failure to comply with the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. Both motions were denied by the trial judge.
The matter was heard on March 3 and March 25, 1997, at which time the child had been with his foster parents for seventeen (17) months. The trial court heard the testimony of Dr. Charles Zeanah, child psychiatrist and medical director of the Infant Team, Dr. Rhonda Palomino, clinical psychologist, and member of the Infant Team who conducted the parenting classes, and Michelle Monam, BCSW, an independent social worker who was asked by the team to evaluate C.F. The trial court also heard the testimony of Dr. Robert Davis, administrative psychiatrist at MARS and Peggy Saunders, program coordinator and counselor at MARS, both of whom provided treatment for C.F. In addition, C.F. also testified during the hearing.
After considering all the evidence presented, the trial court found that C.F. was a low functioning schizophrenic who requires constant supervision, and that it was unlikely that she would be able to care for her child in the foreseeable future. The trial court rendered judgment terminating the parental rights of the mother and freeing the child for adoption.[2] The mother has appealed from the decision terminating her parental rights.

ANALYSIS
Appellant presents three issues for review in this appeal. First, she alleges that the petition for termination of parental rights was premature under La. Ch.C. art. 1004 and, therefore, the trial court erred in denying her motion to dismiss the proceedings. In addition, she alleges that the trial court erred in allowing the district attorney's office to unite with the OCS and enroll in these proceedings. Next, appellant alleges that OCS failed to comply with the provisions of the Americans with Disabilities Act. Lastly, appellant alleges that the trial judge erred in terminating her parental rights because OCS did not meet several requirements of La. Ch.C. art. 1015, and because OCS did not prove that the termination was in the best interest of the child.

PROVISIONS OF LA. CH.C. ART. 1004
Appellant first contends that the Juvenile Court erred in denying her motion for dismissal of the termination proceedings as premature (being filed too early), because OCS failed to comply with the provisions of Ch.C. art. 1004, infra. Related to this issue is appellant's assertion that the trial court erred in allowing the Jefferson Parish District Attorney's office to enroll as co-counsel of record prior to the trial of this matter.
In this case, the child was placed in custody of OCS on September 28, 1995. The petition for termination of parental rights was filed on October 16, 1996, approximately thirteen (13) months later.
La. Ch.C. art. 1004D provides that:
When a petition alleges grounds authorized by Article 1015(8), desertion of the *317 child, or Article 1015(9), abandonment of the child, the department [Louisiana Department of Social Services] may petition for the termination of parental rights of the parent of the child. In cases involving all other grounds authorized by Article 1015, the department may petition for the termination of parental rights of the parent of the child when a child has been placed in its custody for at least eighteen months.

[Emphasis supplied].
In this case, OCS sought termination of parental rights under La. Ch.C. art. 1015(4), (5) and (7). Accordingly, the petition for termination of parental rights was premature at the time of its filing.
However, the district attorney' office joined in the petition by motion to enroll filed on February 20, 1996. La. Ch.C. art. 1004 A provides only that "The district attorney may petition for the termination of parental rights of the parent of the child." It does not impose on the district attorney's office the same time constraints as those imposed on the OCS.
In this case, at this juncture, the Juvenile Court judge recognized that the filing of the petition by the OCS was premature; however, the court felt that the defect was cured by the addition of district attorney, who could have instituted its own petition at any time. We see no error in this ruling.

AMERICANS WITH DISABILITIES ACT
Appellant next alleges that the trial court erred in denying her motion to dismiss the termination proceedings for failure to comply with the Americans with Disabilities Act.
In this case, C.F. alleges that the Americans with Disabilities Act applies to this termination of parental rights proceeding. The trial court found that the Americans with Disabilities Act was not applicable to these proceedings, and even if it were to apply, OCS has made reasonable modifications for C.F. The trial court, therefore, denied appellant's motion to dismiss for failure to comply with the ADA.
The ADA was enacted to meet this nation's goals of assuring to persons with disabilities "equality of opportunity, full participation, independent living, and economic self-sufficiency." 42 U.S.C. § 12101(8). The act encompasses three areas, namely, employment, public services, and public accommodations by private services.
42 U.S.C. § 12132 provides that:
Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.
Appellant is a disabled individual under 42 U.S.C. § 12102(2) which states that "The term `disability' means, with respect to an individual(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual[.]"
In this proceeding, appellant has alleged that OCS has failed to make appropriate modifications in its policy, practice or procedure to avoid discrimination against her on the basis of her disability. However, termination of parental rights proceedings are not "services, programs or activities" within the meaning of the ADA. Accordingly, we hold that the ADA may not be used as a defense in a parental rights termination case.
While this appears to be a case of first impression in our jurisdiction, we note that other courts have also concluded that a parent may not raise violations of the ADA as a defense to termination of parental rights proceedings. Stone v. Daviess County Div. Of Children & Family Services, 656 N.E.2d 824 (Ind.Ct.App.1995); In re Torrance, 187 Wis.2d 10, 522 N.W.2d 243 (App.1994). In the case of In re B.S., Juvenile, 693 A.2d 716 (Vt.1997), the court said:
We further note that nothing in the ADA suggests that denial of TPR [termination of parental rights] is an appropriate remedy for an ADA violation. Under analogous circumstances, other courts have refused to graft ADA requirements onto unrelated *318 statutes. See Buhl [v. Hannigan], [16 Cal.App.4th 1612] 20 Cal.Rptr.2d [740] at 746 [(1993)]; Pack v. Arkansas Valley Correctional Facility, 894 P.2d 34, 39 (Colo.Ct.App.1995); Aquaro [v. Zoning Board of Adjustment of Philadelphia], 673 A.2d [1055] at 1061 [(Pa.Cmwlth.1996)]. This is not to say that the mother is without a remedy if SRS has violated the ADA. The ADA provides for a private right of action for Title II violations, 42 U.S.C. § 12133, and its regulations require public entities to adopt and publicize grievance procedures, 28 C.F.R. § 35.107, and outline a federal complaint procedure, id. § 35.170. Pursuant to these provisions, the mother could have filed a complaint or brought a civil action to obtain relief.
In this case, we agree with the determination of the trial court that the ADA did not apply to this termination of parental rights proceedings and we find no error in its refusal to dismiss this matter for failure to comply with the ADA.
In addition, we note that the trial judge in this matter also found that, should the ADA be found to be applicable to this proceeding, OCS had provided a sufficient program for appellant and had not discriminated against her based on her disability. We have reviewed the evidence presented in this regard and find no manifest error in this holding of the trial court.

TERMINATION OF PARENTAL RIGHTS
C.F. alleges that the trial court erred finding that OCS proved that the provisions of La. Ch.C. art. 1015(5) and (7) had been met. Therefore, it is argued the trial court erred in terminating C.F.'s parental rights and in freeing the minor for adoption. In addition, appellant alleges that OCS did not prove that termination of parental rights was in the best interest of the child.
The termination of parental rights is a severe and terminal action and to permit it the state must satisfy an onerous burden of proof. State in Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309 (La.1993). The grounds for involuntary termination of parental rights are set forth in La. Ch.C. art. 1015, sections 1 through 10. The evidence presented by the state need only prove the grounds for termination under one subsection. In re L.L.Z., supra; State in Interest of B.J., 951915 (La.App. 1 Cir. 4/4/96), 672 So.2d 342, writ denied, 96-1036 (La.5/31/96), 674 So.2d 264. However, all the elements of the particular subsection must be met before termination of parental rights can be ordered. In re L.L.Z., supra.
The state must prove each of the elements by clear and convincing evidence. La. Ch.C. art. 1035; In re L.L.Z., supra; State, In Interest of D.T., L.T., M.T. v. K.T., 29,796 (La.App. 2 Cir. 6/18/97), 697 So.2d 665. This heightened burden of proof requires that the existence of the disputed fact be highly probable, that is, more probable than its non-existence. State, In Interest of G.A., 94 2227 (La.App. 1 Cir. 7/27/95), 664 So.2d 106, citing Louisiana State Bar Association v. Edwins, 329 So.2d 437 (La.1976).
Also, the evidence must show that termination is in the best interest of the child. La. Ch.C. art. 1039; State In Interest of M.L., 95-0045 (La.9/5/95), 660 So.2d 830.
The manifest error rule does apply to termination of parental rights cases. In re G.A., supra. On review, factual findings of the trial court in determining whether the requirements of a particular paragraph of La. Ch.C. art. 1015 have been satisfied will not be set aside in the absence of manifest error. State In Interest of D.S., 96 1820 (La.App. 1 Cir. 9/24/96), 694 So.2d 327, writ denied, 96-2395 (La.12/6/96), 684 So.2d 930.
In the present case, OCS sought termination of parental rights pursuant to La. Ch.C. art. 1015 sections (4), (5) and (7).
La. Ch.C. art. 1015 provides in pertinent part:
The grounds set forth in the petition must meet all of the conditions of any one of the following Paragraphs:
* * * * * *
(4) Prior adjudications as a child in need of care
(a) One year has elapsed since a child in need of care adjudication.

*319 (b) The parent is unfit to retain parental control.
(c) The parent has shown no significant, substantial indication of reformation, and there is no reasonable expectation of his reformation in the foreseeable future.
* * * * * *
(5) Prior adjudication as a child in need of care and removal from the parental home
(a) One year has elapsed since a child was removed from the parent's custody pursuant to a court order in a child in need of care proceeding and placed either in the custody of an agency or individual.
(b) The parent is now unfit to retain parental control, and there is no reasonable expectation of his reformation in the foreseeable future.
(c) The department has made every reasonable effort to reunite the child with his parents to no avail but now recommends that reunification would not be in the best interests of the child.
* * * * * *
(7) Loss of custody due to the parent's condition
(a) One year has elapsed since a court order placing the child in the custody of the department.
(b) The child was removed from the custody of his parents because of the parent's mental illness, mental retardation, or substance abuse.
(c) The parent's condition continues to render the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm.
(d) Despite notice by the department, the parent has refused or failed to provide a plan for the appropriate care of the child other than foster care.
(e) Every reasonable effort has been made under the circumstances to rehabilitate the parent, and such efforts have failed.
(f) There is no reasonable expectation that the parent's condition will change or that he will be rehabilitated in the foreseeable future.
(g) According to expert testimony or proof of an established pattern of behavior, termination of parental rights and adoption are in the child's best interest.
The trial court made extensive findings of fact and concluded that while all of the provisions of section (4) had not been met, all of the provisions of both sections (5) and (7) were met in this case.
We have reviewed the record, and the evidence adduced at the hearing, and find that a rational trier of fact could have concluded, as the trial judge did conclude, that all of the provisions of the pertinent codal articles were met, and that the mother's rights should be terminated. Accordingly, we cannot say that the trial judge committed manifest error in this matter. Because we find no abuse of discretion in the ruling of the trial judge, we see no error in the judgment by the trial court terminating the parental rights of appellant.
Finally, Appellant argues that the trial judge erred in finding that termination of her parental rights is in the best interest of the minor. She further argues that the trial court should have provided that the child remain in foster care and that she be given further treatment/programs to develop her parenting skills.
The trial court, after a lengthy discussion of the evidence in this case, concluded her reasons for judgment as follows:
... Sadly, the Court finds that it is highly improbable that Ms. [F] will ever gain the ability to parent a child. In the meantime, B.F. thrives with the only parents he has ever known in his 17 months of life. B.F. has the right to a safe, happy and loving existence with adults who are willing, capable and ready to provide for his needs. He has such an opportunity with his foster parents, who stand ready to adopt him at any time. While the Court has sympathy and compassion for the condition of Ms. [F], it cannot ignore the clear and convincing evidence presented by the State, or the compelling interest of B.F.
*320 It is clear from the above that the trial judge found that the evidence showed that even with additional treatment, it was unlikely that C.F. would be able to independently care for her child in the foreseeable future, and that the best interest of the child would be served by terminating parental rights and freeing him for adoption. Under the facts of this case and the finding of the trial court, we see no manifest error in this determination even though we share the trial judge's sympathy and compassion for the natural mother. This Court has previously stated, and the trial judge cited this in her reasons for judgment, the consideration:
... that adults can take years to improve their functioning but that children are not granted the same amount of time, and their lives are significantly disrupted while their parents are attempting to deal with their own problems.
State In Interest of C.D., 558 So.2d 806, 810 (La.App. 5 Cir.1990); State In Interest of M.P., 538 So.2d 1112, 1116 (La.App. 5 Cir. 1989).

CONCLUSION
For the above discussed reasons, the judgment of the trial court terminating the parental rights of C.F., and freeing the minor child, B.K.F., for adoption, is affirmed.
AFFIRMED.
NOTES
[1] The Infant Mental Health Team is composed of various professionals, including psychiatrists, psychologists and social workers. It collaborates with parish and state agencies to provide comprehensive therapeutic assessment and treatment programs for infants in protective custody and their parents.
[2] B.H., the father of the minor child, suffers from a bipolar condition and admitted that he wasn't able to care for the child. His parental rights were terminated by judgment rendered on March 24, 1997. B.H. did not appeal from that decision.