11 McKAY, Judge.
G.R., mother of the minor children, appeals the judgment of the trial court terminating her parental rights of E.N. and K.Q., and granting the Louisiana Department of Social Services continued custody of the children, and making them free and eligible for adoption. Finding no manifest error in the trial court’s determination, we affirm.
On September 9, 1997, and again on June 8,1998, E.N. and K.Q. were placed in the custody of the Louisiana Department of Social Services. Their brother M.N. was also placed in temporary foster care but custody was awarded to his biological father. Continued custody hearings were held on September 12, 1997, and June 12, 1998, with the Department of Social Service maintaining custody.
A “child in need of care” petition was filed on September 30, 1997, and again on July 17,1998. The children were adjudicated to be in need of care in both instances. The 1997 plan was to reunify the mother with her children. The 1998 plan was to terminate the mother’s parental rights. On June 7, 1999, plaintiffs 12parental rights of E.N. and K.Q. were terminated. The judgment was rendered on June 7, 1999, and signed on June 11, 1999. The plaintiff timely filed her appeal on June 24, 1999, thirteen days after the signing of the judgment. In juvenile matters an appeal has to be filed within 15 days from the day the judgment is signed. La. Ch.C. art. 332.
FACTS
G.R. has had five children. In 1979, based on her neglect and substance abuse and the abandonment by the father, N.N., their parental rights of J.N. and N.N. Jr., were terminated in 1982. G.R.’s parents subsequently adopted J.N. and N.N. Jr., G.R. and N.N. were divorced in April of 1985. On July 18, 1985, E.N. was born and bears N.N.’s surname but he is not the biological father of E.N. The biological fathers of E.N. and K.Q. are deceased. In *196 1986, E.N. was placed in the foster care of his paternal grandmother due to complaints of G.R. neglect and abuse of her children. E.N. was returned to G.R. in 1991. By this time she had given birth to M.N. who is now in the custody of his biological father, W.S. and is not the subject of this appeal.
In 1996 and 1997, the state received five complaints of abuse or neglect concerning the appellant and all three of her children, E.N., K.Q. and M.N. In February of 1996, there were complaints of physical abuse on the children and the appellant by Gary.R. the appellant’s husband. Gary R. died in June of 1996, of an alleged drug overdose. On September 9, 1997, while living with her children at the Quality Inn Motel, G.R. was arrested for outstanding warrants. The children were |splaced in the temporary care and custody of the Department of Health and Human Resources, Division of Children, Family and Youth Services pursuant to a court instanter order. The children by order of the court were to remain in foster care while G.R. was incarcerated. On October 17, 1997, the trial court ordered the children returned to her upon her release from jail contingent upon her obtaining stable housing and attending substance treatment. She was subsequently released on November 24, 1997, but had no home to return to, therefore the children remained in temporary foster care until December 23, 1997, when they were released back to her custody. Over the next month DSS/OCS case manager Cathy Kennedy Galila, assisted G.R. in obtaining furniture, clothing, paying utility deposits, paying one months rent and obtaining a State identification so that G.R. could get employment. She also supervised the family and testified that the mother’s case plan was to remain alcohol and drug free, complete treatment at a substance abuse clinic, maintain stable housing and obtain stable employment. The plan goal at that time was temporary foster care-with a goal toward reunification with the mother. Over the course of the next few months G.R. allegedly remained sober and the children did not complain to Ms. Galila. Nevertheless, G.R. kept only one appointment with the substance abuse clinic. The house remained clean and there was ample food but G.R. was also notified of home visits in advance. Yet, there were unsubstantiated claims that G.R. was still abusing drugs and alcohol. This State supervision remained in effect until May 11,1998.
|4On June 8, 1998, twenty days after the state requested to be relieved of supervision, the children were placed back in foster care on an emergency basis, because nine-year old M.N. was picked up for shoplifting. At 10:00 p.m. when the deputies arrived at the family home they found five-year old K.Q. riding his bike in the street. They could not locate E.N. nor G.R. The deputies took the children to the police station where G.R. later arrived intoxicated. The children admitted that they were often left alone and had to beg the neighbors for food. E.N was finally located at a neighbor’s home. G.R. was arrested for abandonment.
Ms. Galila testified at trial that prior to this incident the case plan goal was for family reunification. But, as a consequence of this latest incident, the case goal plan was changed from reunification to that of termination of parental rights. G.R. was incarcerated until September 23, 1998. Of the twenty-six scheduled visits with the children, G.R. attended nine and missed seventeen. Two of the nine were while she was in jail and the children were brought to the jailhouse to visit her. Transportation was provided for G.R. to visit her children but she often could not be found. G.R. went to the substance abuse clinic on October 14, 1998, for her intake appointment and did not return to the clinic until December 1,1998. Because of her lack of compliance the clinic closed her case. After G.R. was released from jail in September of 1998, she had a number of different residences. Her whereabouts were unknown from October 26, *197 1998 to December 1, 1998. She often failed to inform her caseworker, Ms. Gali-la, of her whereabouts. G.R. also held a job at a drugstore for only one-week in January of 1999, claiming poor | shealth and hospitalizations as an excuse for missing work. G.R. has admitted that she has a liver disease from alcohol consumption. Her medical records reveal severe liver dysfunction due to alcohol consumption and substance abuse. Her arrest record includes 27 felony arrests and 28 misdemeanor arrests. On January 21, 1999, the trial court authorized OCS to proceed with the petition for termination of parental rights. G.R. was notified of this change in the ease plan, notice of the hearing scheduled for the parental termination hearing and counsel was appointed on her behalf.
On May 26, 1999, the week before the trial, G.R. made an appointment with the substance abuse clinic. On the day of the trial she gave verification that she had attended ten Alcoholics Anonymous meetings which she had begun attending one month prior to trial.
DISCUSSION
The issue raised by appellant is whether the State carried its burden of proof under the applicable provisions of the Louisiana Children’s Code, specifically, La. Ch.C. arts. 1015(3)(j)(k) and 1015(5).
Termination of parental rights is a severe and terminal action and to permit it the State must satisfy an onerous burden of proof. State in the Interest of L.L.Z. v. M.Y.S., 620 So.2d 1309, 1313 (La.1993); citing, State in the Interest of JML, 540 So.2d 1244 (La.App. 3 Cir.1989). In a termination of parental rights ease, the State must prove all the elements by clear and convincing evidence. La. Ch.C. art. 1035. The evidence must allow the conclusion that termination is in the best | ^interest of the child. State in the Interest of D.T. v. K.T., 29,796 (La.App. 2 Cir. 6/18/97); 697 So.2d 665, 668.
More than simply protecting parental rights, our judicial system is required to protect the children’s rights to thrive and survive. State in the Interest of S.M., 98-0922 (La.10/20/98); 719 So.2d 445, 452. Furthermore, while the interest of a parent is protected in a termination proceeding by enforcing the procedural rules enacted to insure that parental rights are not thoughtlessly severed, those interests must ultimately yield to the paramount best interest of the child. Id.
Based on the record, G.R. has continued her alcohol and substance abuse, without seeking adequate therapy, she has failed to actively seek or attain gainful employment and she has failed to establish sufficient stable housing. Although, she testified that she now lives with her fiancé and that they intend to support the children on his disability check and her social security check, her actions make it abundantly clear to the trial court that she has failed to rehabilitate herself or recognize the repercussions of her inaction. These failures preclude a reasonable expectation of reform as required to prevent termination of parental rights.
La. Ch.C. art 1015 provides:
The grounds for termination of parental rights are:
⅜ V ⅜ ⅜ $
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which had been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant ^improvement in the parent’s condition or conduct in the near future, considering the child’s age and his needs for a stable and permanent home. (Emphasis added).
The State must prove that the parent is unfit to retain parental control *198 and that there is no reasonable expectation of reformation in the foreseeable future in order to obtain termination of parental rights when the child has been removed from the parent’s home. State in the Interest of D.T. v. K.T., 29,796 (La.App. 2 Cir. 6/18/97), 697 So.2d at 670. Furthermore, the Department of Social Services need only fulfill the requirements of one of the statutory grounds for termination of parental rights. State in Interest of H.D. and C.D., 98-0953 (La.App. 4 Cir. 11/4/98); 721 So.2d 1045, 1047.
The initial child in need of care adjudication pertaining to E.N., K.Q. and M.N.[1] was on October 17, 1997.[2] The children were to be returned to her upon her release from jail. Part of the order was also that she seek substance abuse treatment and that she find permanent housing for the children. Upon her release from jail her caseworker, Ms. Galila, confirmed that G.R. understood that she was to remain drug and alcohol free, attend substance abuse treatment, maintain stable housing and gainful employment. The children were returned to G.R. on December 23, 1997, a month after her release. Supervision continued until May 11, 1998. Despite reports of G.R.’s continued alcohol and substance abuse, none could be substantiated, and the home environment passed her inspection. Ms. Galila attributes this to her inspection visits being planned and noticed in advance. Consequently, on May 11, 1998, Ms. Galila asked the court to relieve DSS/OCS of 1 ssupervision. A mere twenty days elapsed when the OCS was forced to place the children back into foster care on an emergency basis when nine year old M.N. was found shoplifting at the Wal-mart at night. The youngest, K.Q., who was 5 years old, was found unattended riding a stolen bike on the highway and the third child E.N., who was thirteen years old, could not be found, nor could G.R. While at the police station the children confirmed that they were often left alone and had to beg the neighbors for food. Furthermore, they had not eaten that day until the deputies fed them. G.R. later showed up to claim her children while in an intoxicated state and admitted that she was at the Hideaway Bar and with unsubstantiated excuses for her neglect of the children. She was arrested for abandonment.
G.R. remained incarcerated until September of 1998. When she was released from jail, she failed to keep diligent visitations with her children, she failed to inform her case worker of her whereabouts, she failed to attend substance abuse treatment as ordered and she failed to find permanent housing or employment. These factors point to a lack of concern for her children and a defiant attitude toward the court order.
La. Ch.C. art 1015(5) allows the trial court to shorten the one year requirement for the children to be under a case plan. Considering that the children were originally removed on October 17, 1997, the brief period of time in which the OCS was forced to once again intervene for the protection of the children and the circumstances surrounding the instant matter, we cannot find that the trial court abused his discretion in applying La. Ch.C. art 1015(5) to the matter at hand. We further find that the State has established its burden of proof by clear and | gconvincing evidence that G.R. has failed to rehabilitate herself by attending substance abuse treatment and establishing a permanent residence for her children.
Appellant further avers that the state failed to meet their burden of proof pursuant to the grounds for termination of pa *199 rental rights enunciated in Ch. C. art 1015(3)(j) and (k).
The article states that:
(3) Misconduct of the parent toward this child or any other child of the parent or any other child in his household which constitutes extreme abuse, cruel and inhumane treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring, or soliciting to commit any of the following:
(j) Abuse or neglect after the child is returned to the parent’s care and custody while under department supervision, when the child had previously been removed for his safety from the parent pursuant to a disposition judgment in a child in need of care proceeding.
(k) The parent’s parental rights to one or more of the child’s siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful.
In supr rt of the first prong of the test pursuai La. Ch.C. art 1015(3)(j), the state oL u the testimonies of Ms. Galila and Ms. Roome, both case workers in the instant matter, confirming the appellant’s resistance to comply with the terms of her case plan. The record establishes that the children were in the custody of the State pursuant to two judgments of a child in need of care proceeding on September 30, 1997, and July 17, 1998. Despite the goal for family reunification, G.R. continued to neglect the children and place them in harm’s way. On June 8, 1998, the children were again placed in the custody of the State, which resulted in her arrest and conviction for abandonment. Again, G.R. failed to comport with the case plan. Her life-style resulted in grossly negligent behavior below the |inreasonable standard of human decency toward her minor children. On June 8,1998, she abandoned her children by once again leaving them alone without supervision or food. Her actions ultimately resulted in the termination of her parental rights. The State’s evidence establishes that it has met its burden. The trial court properly ruled in favor of the State by rendering a judgment terminating the appellant’s parental rights pursuant to La. Ch.C. art. 1015(3)(j).
In support of the second prong of the test pursuant to La. C.Ch. art. 1015(3)(k), the state offered evidence of the termination of G.R.’s parental rights concerning her two older sons J.N. and N.N. Jr. in 1979 when they were found home alone. They were placed in the custody of DSS/OCS with Marcia Roome as their casemanager. Ms. Roome testified in the instant matter that services were attempted with appellant to address her substance abuse problems from 1979 to 1982, to no avail. The father of the children, N.N., who is the legal father of E.N., abandoned the children. Both parents’ rights were terminated as to J.N. and N.N. Jr. in 1982. Ms. Roome was also temporarily assigned to G.R.’s new case plan concerning the instant matter verifying that G.R. has continued to display a pattern of recidivism and non-compliance with any of her case goal plans to date. Clearly, based on the record and the testimony of Ms. Roome, the state has met its burden of proof and the trial was errorless in his judgment of parental termination pursuant to La. Ch.C. art. 1015(3)(k).
Whether there has been adequate proof of G.R.’s substantial compliance with the case plans, the success of her rehabilitation, and the expectation of significant improvements in her condition are all questions of fact. On review, factual findings of the trial court in determining whether requirements of a particular paragraph have been satisfied will not be set aside absent manifest error. In State in Interest of D.S., 96-1820, p. 5 (La.App. 1 Cir. 9/24/96); 694 So.2d 327, 331, writ denied, 96-2395 (La.12/6/96); 684 So.2d 930. *200 We find sufficient evidence in the record to support a finding that G.R. is unfit to retain parental control and that she has shown no significant or substantial indication of her reform in the future. We therefore conclude the State proved by clear and convincing evidence all of the elements set forth in the pertinent provisions of the Children’s Code.
Furthermore, after a review of the record before us, we cannot say that the trial court was clearly wrong in his factual determinations that the State proved the allegations of its petition setting forth the grounds for involuntary termination of parental right enumerated in La. Ch.C. art. 1015(5) and (3)(j)(k). We find no manifest error in the trial court’s factual determinations.
Accordingly, for the reasons stated herein, the judgment of the trial court is affirmed.
AFFIRMED.

. M.N. is not the subject of this case.

. Her parental rights to two other children, J.N. & N.N. Jr. were terminated in 1979. There were also additional complaints of abuse and neglect of E.N. in April of 1986, where he stayed in the foster care of his. grandmother until 1991. Allegations of emotional abuse and neglect were also found valid in 1996 and services were provided to the family.