I JAMES L. CANNELLA, Judge.
The Department of Social Services of the State of Louisiana (the Department) appeals from the trial court ruling denying the Department’s Petition for Termination of Parental Rights of Betty Gibson (Gibson), the mother of the three minor children who are the subject of this case. For the reasons which follow, we reverse.
Gibson is the mother of eight minor children. Two of those children live with their paternal grandmother in Georgia. Two of the children live with Gibson’s parents in Alabama, where they were placed after a judgment of termination of parental rights. One child is in the custody of his natural father. This proceeding involves the remaining three children, BG, born July 24, 1993, AG, born February 22, 1995, and RC, born March 1, 1996. BG and AG were first placed in the custody of the state in March, 1995. At that time there were numerous home problems, no food, no electricity, broken windows, no hot water and no operable bathroom facilities. AG was just three weeks old and had not | ^gained weight since birth. The two children were adjudicated children in need of care on June 13, 1995. RC was born on March 1, 1996. BG and AG were then returned to their mother with agency supervision. Another child, KG, was born on February 13, 1997. Agency supervision was terminated on February 14, 1997. About one month later, on March 16, 1997, KG was admitted to the hospital for malnutrition and failure to thrive, among other things. He had lost two pounds in the month since his birth. Upon investigation, the Department determined that BG, AG and RC were being cared for by Angela Sanders (Sanders), the mother of the acknowledged father of BG and AG and alleged father of RC. Custody of KG was placed with his father. On March 25, *924 1997, Sanders informed the Department that she could no longer care for the three children and they entered foster care where they have remained. On September 9, 1997, the children were again adjudicated in need of care.
On March 17,1999, the Department filed a petition to terminate Gibson’s parental rights[1] based on La. Ch.C.art. 1015(5). The case was tried over four days. At the time of trial, the three children had spent all but about one year of their lives in foster care. The trial court took the case under advisement. On January 17, 2001, the trial court rendered judgment denying the petition to terminate the parental rights of Gibson, finding that the Department had not met its burden of proof. It is from this judgment that the Department appeals.
On appeal, the Department argues that the trial court was clearly wrong in its findings that the Department failed to prove, by clear and convincing | ¿evidence, each of the elements of La. Ch.C. art. 1015(5), which warrant termination and that termination is not in the best interest of the children.
La. Ch.C. art. 1015(5), the statute upon which this termination proceeding was based, provides:
The grounds for termination of parental rights are:
(5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent’s custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future, considering the child’s age and his need for a safe, stable, and permanent home.
This court has held that in order to terminate parental rights, the Department must establish that all elements of the section or ground for termination relied upon have been met. State of Louisiana in the Interest of B.F.K., 97-572 (La.App. 5th Cir.11/25/97), 704 So.2d 314. The Department bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence. La. Ch.C. art. 1035. Thus, the Department had the burden of proving, by clear and convincing evidence, that (1) at least one year has elapsed since the child was removed from the parent’s custody pursuant to court order; (2) there has been no substantial parental compliance with the case plan for services which has been previously filed by the Department and approved by the court as necessary for the safe return of the child or children; and (3) there is no reasonable expectation of significant improvement in the parent’s condition or conduct in the near future.
I .ONE YEAR HAS ELAPSED SINCE REMOVAL
There is no dispute about the first element of the ground for termination. The children were placed in state custody in March of 1997 and have remained there to this date.
NO SUBSTANTIAL PARENTAL COMPLIANCE WITH CASE PLAN
The Department argues that the trial court erred in finding that the Department had not met its burden of proving the *925 second element of the ground for termination, lack of substantial compliance with the case plan.
In ruling against the termination of Gibson’s parental rights, on this point the trial court stated:
Initially, it was determined that she needed to be assessed psychologically. She was available for the appointments and cooperated .with the assessment process. She was informed that she needed to be drug free. All of her screenings were negative. She was required to attain skills necessary to obtain employment. Through vocational services, she was hired at K-Mart, in LaPlace, Louisiana. She subsequently lost that job, but obtained several other jobs following the K-Mart job. According to the testimony of her case workers, Charlene Marchand and Carolyn Kennedy, she was in substantial compliance with all of the requirements of the agency. Therefore, this element of subsection 5 has not been met.
La. Ch.C. art. 1036(C) delineates the evidence of parental misconduct that proves “lack of parental compliance with a case plan” providing:
C. Under Article 1015(5), lack of parental compliance with a case plan may be evidenced by one or more of the following:
(1) The parent’s failure to attend court-approved scheduled visitations with the child.
(2) The parent’s failure to communicate with the child.
i fi(3) The parent’s failure to keep the department apprised of the parent’s whereabouts and significant changes affecting the parent’s ability to comply with the case plan for services.
(4)The parent’s failure to contribute to the costs of the child’s foster care, if ordered to do so by the court when approving the case plan.
(5) The parent’s repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent’s lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

(Emphasis provided.)
The Department argues that the trial court failed to consider all of the possible evidence that could support the finding, particularly, subsections (6) and (7) of section (C). Rather, the trial court only listed three activities that Gibson was asked to complete and found that because she had performed them, the Department had not met its burden of proof. The Department contends that the record fully supports a finding that they have proven, by clear and convincing evidence, Gibson’s lack of substantial improvement in redressing the problems preventing reunification and the persistence of conditions that led to removal.
In limiting consideration to these three areas, the Department argues that the trial court erred in so limiting her review and in failing to also consider the evidence allowed under subparts (6) and (7), requiring some showing of improvement. In other words, the Department argues that under the law, a finding that Gibson is trying, is not alone sufficient where the Department proves a lack of substantial improvement. We agree.
|7La. Ch.C. art. 1036(C) expressly sets out the evidence, listing seven factors that can be used to satisfy under La. Ch. C.art. 1015(5), the second element of the ground for termination, lack of parental *926 compliance with the case plan. Further, it provides that lack of parental compliance may be evidenced by one of the listed factors. While the first five factors relate to the actions of the parent in doing what she is directed under the case plan, both factors 6 and 7 relate to improvement or the lack thereof in redressing the problems that led to removal. Considering the reasons for judgment provided, we find that the trial court did not consider the proof presented under factors 6 and 7, requiring improvement by the parent. This was legal error on the part of the trial court requiring us to review the record to determine whether the Department met its burden of proving, by clear and convincing evidence, Gibson’s lack of substantial improvement in redressing the problems preventing reunification or that the conditions that led to removal persist.
First, and most compelling, we find that not one doctor, counselor, social worker, case manager or even the trial judge thought that the children should be returned to Gibson. In other words, the conclusion, that the conditions that led to the removal of the children from their mother still persist, is virtually undisputed. Moreover, it has been three years since these children were removed from their mother, not just the required one.
Second, although the trial judge listed three examples of Gibson’s compliance with the case plan, we find several examples of non-compliance or lack of improvement in the problem areas that caused removal and continue to prevent reunification. The case plan addressed a number of problems before the children could be returned home, not all of which have been complied with by |RGibson. There were problems concerning medical neglect, parenting abilities, lack of income, possible substance abuse or being around substance abusers, domestic violence, personal behavior like using obscenities, provoking altercations, and name calling. Also, there were general housekeeping problems like filth, lack of food, and lack of utilities. While some improvements have been made in some areas, for example, the Department did assist her in finding suitable housing. Several problems remain. The record indicates that she continues to associate with drug users, housekeeping problems persist, she does not have a job, and her personal behavior around the children has not improved despite instruction in all of these areas, and this is while she is alone, much less with the return of three children.
Gibson was evaluated by Dr. Ivory Told-son, specifically to assess her parenting capability. Gibson was diagnosed with Mood Disorder NOS, Intermittent Explosive Potential Borderline Personality Disorder and Mild Mental Retardation with an IQ of less than 70. Dr. Toldson testified that it was doubtful to him that Gibson would benefit from intervention to the point that she could ever effectively parent her children. He stated that he felt that there was a “low likelihood” that Gibson would ever be able to parent successfully on a day-to-day basis. Finally, he stated that it was his opinion that the best interest of the children would be served by terminating Gibson’s parental rights. Nevertheless, he made two recommendations for services by the Department, individual parenting training and vocational rehabilitation.
Gibson received vocational services and job training through The Wellness Institute. The Wellness Institute then found her a job at K-Mart. They also provided her with a job coach who actually went to work with her and 19demonstrated and explained to her exactly how to do her job. Even with this one-on-one, on the job training Gibson was fired after a few *927 months for poor attitude and low productivity. Gibson did not contact The Wellness Institute for further assistance. She performed some domestic work, delivered newspapers, worked on the ferry and by the trial date, had gotten a job at a McDonald’s restaurant. However, after a mid-trial delay, when trial resumed in October 2000, the evidence indicated that she was no longer employed at McDonald’s, although she stated that she was on vacation. Thus, her skill or commitment to work are questionable at best and she does not have regular employment which was required by her case plan.
As to Dr. Toldson’s other recommendation of individual parenting training, the Department found it difficult initially to find a one-on-one parenting program. Gibson was first referred to a group program, but it was determined that she could not learn in a group. Thereafter, Ray White (White) was assigned to Gibson for one-on-one parenting lessons. White had ten sessions with Gibson, four at her apartment and six in his office. After the ten sessions, he reported that he could not recommend reuniting the children with Gibson because of her lack of parenting skills and the drug abuse, through boyfriends, in her home.
Dr. Lynette Causey was then assigned to the case to determine what steps should be taken. Dr. Causey recommended one-on-one counseling to be present during visits with her children so that Gibson could learn to mimic good parenting techniques. Charlene Marchand (Marchand), Gibson’s case worker, personally implemented Dr. Causey’s recommendation. Marchand and Carolyn Kennedy, also a case worker, worked directly with Gibson extensively. The interactions between Gibson and the children often did not go well. She could | ]0not control the children. She continued to use obscenities and seemed to cause fights between the children. She called them inappropriate names. She would tell the children things that the caseworkers had specifically told her not to say, like they would be coming home or promising them things.
Further, while it was true that Gibson herself was not using drugs, she had been told not to associate with drug users. Evidence was presented that she had continued her relationships with drug abusers. Also, although her housing has improved with the assistance of the Department in re-locating her, the evidence indicates that several housekeeping problems still persist, like the lack of food and uncleanliness of the apartment.
Based on the foregoing, we find clear and convincing evidence in this record that the Department proved the second element of the ground for termination, lack of parental compliance with the case plan, by not only proving the parent’s lack of substantial improvement in redressing the problems that prevent reunification and a persistence of the conditions that led to removal, but also by proving Gibson’s failure to comply with certain essential aspects of the case plan.
REASONABLE EXPECTATION OF SIGNIFICANT IMPROVEMENT
The Department argues that the trial court erred in finding that they failed to establish by clear and convincing evidence that there is no reasonable expectation that Gibson will make significant improvement in the near future. The trial court essentially based this determination on the finding that the Department had not provided all of the services that had been recommended for Gibson, particularly the one-on-one “mimicking” services, that is, having someone in her home with her and the children to show her repeatedly how to do lathings. The trial court *928 seemed to be of the view that unless and until everything possible was tried, Gibson’s parental rights should not be terminated.
La. Ch.C. art. 1036(D) delineates the evidence of parental misconduct that proves a “lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future” providing in pertinent part:
D. Under Article 1015(5), lack of any reasonable expectation of significant improvement in the parent’s conduct in the near future may be evidenced by one or more of the following:
(1) Any physical or mental illness, mental deficiency, substance abuse, or chemical dependency that renders the parent unable or incapable of exercising parental responsibilities without exposing the child to a substantial risk of serious harm, based upon expert opinion or based upon an established pattern of behavior.
[[Image here]]
(3) Any other condition or conduct that reasonably indicates that the parent is unable or unwilling to provide an adequate permanent home for the child, based upon expert opinion or based upon an established pattern of behavior.
The Department argues that the trial court’s finding on this point was erroneous. They contend that the record shows that the Department did follow all recommendations and met their burden of proving that Gibson’s mental deficiency renders her incapable of exercising parental responsibilities without exposing the children to a substantial risk of serious harm based upon expert opinion as well as her established pattern of behavior. We agree with the Department.
The record in this case is full of evidence that the Department has complied with all recommendations and they have not worked to significantly improve 1 ^Gibson's ability to exercise her parental responsibilities without risk to the children. Gibson received one-on-one job instruction with the on the job “mimicking” training and she could not retain the job. She did not contact the Wellness Institute for further assistance and has not with any consistency retained employment. White worked with Gibson on a one-on-one basis, although not in the home with the children, and, following ten sessions, did not think that she could parent her children. Mar-chand and Kennedy worked with Gibson on a one-on-one basis for a lengthy period of time and found improvement minimal. Following specific instructions to Gibson about not using obscenities with the children or name-calling or telling them inappropriate things, she continued to do exactly those things. They suggested that she bring a game to focus interaction with the children. She did it twice and the visits went better. Then, she never brought a game again. She was instructed to discontinue association with drug abusers and yet she continued such association right up to the trial date. Thus, the record presents ample evidence contrary to the trial court finding that the Department has tried every recommended plan and the evidence shows that Gibson remains incapable of exercising her parental responsibilities without exposing the children to a substantial risk of harm.
Moreover, Gibson’s established pattern of behavior evidences a lack of any reasonable expectation of significant improvement in her conduct in the near future. Her history does not inspire confidence in her future. She has two .older children who live with their paternal grandmother in Georgia. She has two other older children who live with her parents in Alabama *929 following removal from her custody after a judgment of termination of parental rights. BG and AG were first placed in state custody in March of 1995. AG was just three weeks old and had l13not gained weight since birth. The children remained in state custody for about a year at that time. Gibson gave birth to RC. Following return of the children and over a year of state supervision, Gibson gave birth to a fourth child, KG. State supervision terminated. Within about one month after his birth and the termination of state supervision, KG was hospitalized for malnutrition and failure to thrive. He had lost two pounds since his birth. Gibson has demonstrated a pattern of relationships with drug abusers. She has also demonstrated a pattern in her inability to keep herself safe. She irrationally trusts others who consistently take advantage of her by stealing from her. The children have been in state custody for three years since their 1997 removal and Gibson has continued in her initial behavior that led to removal, unemployment, lack of housekeeping ability, continued association with drug abusers and inappropriate behavior around the children.
Based on our review of the whole record, we find that the trial court erred in her determination that the Department had not met its burden of proof, by clear and convincing evidence, that there was a lack of any reasonable expectation of significant improvement in Gibson’s conduct in the near future.
BEST INTEREST OF THE CHILDREN
The Department argues that the trial court erred in finding that termination of Gibson’s parental rights was not in the best interest of the children. The trial court found that “long term foster care and all that it entails is in the best interest of the children.” The Department argues that this finding by the trial court is contrary to both the law and the facts in this case.
The Adoption Assistance and Child Welfare Act (AACWA), 42 USCA 671 et seq., requires that the state develop an alternative permanency plan when there |14js no reasonable probability of reunification. La. Ch.C. art. 603(15) defines permanent placement as one of the following: (1) the return of the legal custody of a child to his parent(s); (2) the placement of the child with adoptive parents pursuant to a final decree of adoption; (3) the placement of the child with a legal guardian. Long-term foster care is not a permanent placement.
We agree with our brethren on the Third Circuit Court of Appeal where they found:
The intent of the AACWA was to combat the foster care limbo to which so many of the nation’s abused and neglected children were being subjected.
State in the Interest of D.R.B., 00-1321 (La.App. 3rd Cir.12/12/00), 777 So.2d 508.
Thus, by law, we find that long term foster care is not deemed to be in the best interest of the children. And, we find no compelling facts in this case to lead us to a contrary conclusion. These children have been in state custody for most of their young lives. BG and AG have a foster family that is willing to adopt them. RC likewise has a foster family that is interested in adopting him. The families have become acquainted and allow the siblings to visit each other. Gibson has not, in the last three years, demonstrated her ability to care for her children such that they can be returned. We note again, that no one, not even the trial judge, is recommending reunification of the children with their mother. It is not disputed that she is not now capable of handling that responsibility.
*930 The trial court, as well as counsel for the children, seemed to be motivated by concern for Gibson, and that is not without reason. What emerges from this record is a very disheartening scenario. Gibson is mentally deficient and has very limited ability to become an effective parent, unfortunately perhaps, through |1fino fault of her own. She has an IQ of 70 and a learning level of a second grader. She relates to her children as more of a peer than a parent. She was herself a foster child who, although adopted, left her home at a very early age. She has no resources or support system for assistance. Her mother lives in Georgia and is already raising two of her other children that were removed from her by the Georgia courts. She is alone here and simply cannot parent these children without someone living with her every day and assisting her. She states that she loves her children very much and we have no doubt that she does. However, she lacks the necessary minimal ability to exercise parenting skills that will ensure the safety of her children in her custody and there is no evidence that she will likely acquire those skills in the near future. It is unlikely that reunification will ever be in the best interest of the children. The children have been in the custody of the Department most of their lives. They are in foster families who want to adopt them and they are doing well in these environments. While we fully understand that the termination of her parental rights will be a difficult thing for Gibson, her interests are not the standard by which this case must be resolved.[2] Rather, it is the best interest of the children that must control the outcome. Over many years the Department has done a great deal for Gibson. There has been no improvement, nor likelihood for improvement. Unfortunately, she is either unwilling or unable to change. This Court has struggled over the rights of Gibson and the plight of her children. We must consider the children first. We [1fifind that the record supports the grounds for termination of Gibson’s parental rights and that said termination is in the best interest of the children.
Accordingly, the decision of the trial court denying the Department’s petition to terminate the parental rights of Gibson as to her three children, BG, AG, and RC, is reversed. The case is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.

. The Department also sought to terminate the parental rights of the alleged biological father of the children, BG and AG, and the unknown father of RC. This part of the petition was granted by the trial court and is not the subject of this appeal.

. The trial court seemed to be of the view that continued contact between Gibson and her children might be in the children’s best interest. We note that La. Ch.C. art. 1037.1 provides the means to accomplish this, if appropriate, without requiring Lhe children to remain in foster care limbo by denying the petition to terminate. This was not considered by the trial court and we express no opinion herein as to whether it would be in the best interest of these children.